UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:12-CV-23097-O'SULLIVAN
[CONSENT]

OMAR DEL CARMEN VALLE CENTENO
NESTOR JOSE MEJIA OBANDO and
all other similarly situation under
29 U.S.C. 216(B),

       Plaintiffs

vs.

I&C EARTHMOVERS CORP., LEONEL
GARCIA and CARLOS M. GARCIA,

       Defendants
_____/

## ORDER

THIS MATTER is before the Defendants' Motion for Summary Judgment (DE# 53, 7/26/13) and the Plaintiffs' Motion for Summary Judgment (DE# 54, 7/27/13). Having carefully considered the parties' motions, the court file and applicable law, the undersigned enters the following Order.

## BACKGROUND

On September 25, 2012, the plaintiffs filed their Second Amended Complaint under 29 U.S.C. § 201-216 Overtime Violations (DE# 14, 9/25/13). The case was brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-216, (hereinafter "FLSA"). Count I was a federal overtime wage claim on behalf of both plaintiffs and Count II was a retaliation claim on behalf of plaintiff Nestor Jose Mejia Obando (hereinafter "Mr. Mejia").

On July 26, 2013, the defendants filed their motion for summary judgment. See Defendants' Motion for Summary Judgment (DE# 53, 7/26/13). The plaintiffs filed their

response to the defendants' summary judgment motion on August 16, 2013 and a statement of material facts in opposition to the defendants' motion. See Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (DE# 60, 8/16/13); Plaintiffs' Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 61, 8/16/13). On August 19, 2013, the plaintiffs filed a notice of supplemental authority regarding plaintiff Mejia's retaliation claim. See Notice of Supplemental Authority Regarding Retaliation (DE# 63, 8/19/13). The defendants filed their reply in support of their motion for summary judgment on August 23, 2013. See Defendants' Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment (DE# 64, 8/23/13).[1]

The plaintiffs filed their motion for summary judgment on July 27, 2013. See Plaintiffs' Motion for Summary Judgment (DE# 54, 7/27/13). On the same day, the plaintiffs filed their statement of material facts. See Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment (DE# 55, 7/27/13). The defendants filed their response in opposition to the plaintiffs' summary judgment motion on August 14, 2013. See Defendants' Response to Plaintiff's Motion for Summary Judgment (DE# 59, 8/14/13). The plaintiffs filed their reply in support of the instant motion on August 19, 2013. See Plaintiffs' Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment (DE# 62, 8/19/13).

This matter is ripe for consideration.

---

[1] On August 28, 2013, the defendants filed Defendants' Motion for Extension of Time/Motion for Stay to File Supplementary Evidence in Support of Summary Judgment (DE# 68, 8/28/13). That motion will be addressed in a separate Order.

## FACTS[2]

I & C Earthmovers Corporation (hereinafter "Earthmovers") is a construction

company. See Affidavit of Carlos Garcia (DE# 53-12 at ¶16, 7/26/13). "Earthmovers

provides general contractor services for construction projects, specifically for the

building of roadways and highways." Defendants' Motion for Summary Judgment (DE#

53 at 1, 7/26/13). In order to perform this work, Earthmovers' employees use

excavators, loaders and bulldozers which are manufactured outside the state of Florida.

See Plaintiffs' Statement of Undisputed Fact (DE# 55 at ¶19, 7/27/13). At least two or

more employees on a regular basis handle this machinery. Id. at ¶22.

Earthmovers grossed over $500,000 annually during the relevant time period.

See Plaintiffs' Statement of Undisputed Fact (DE# 55 at ¶18, 7/27/13). Carlos Garcia is

the president of Earthmovers. Id. at ¶7. Leonel Garcia is the vice president of

Earthmovers. Id. at ¶6. Messrs. Garcia signed checks on behalf of Earthmovers,

including payroll. Id. at ¶2. The plaintiffs reported their hours to either Leonel Garcia or

Carlos Garcia on a daily basis. Id. at ¶11. Leonel Garcia issued warnings to Mr. Mejia.

Id. at ¶12. Carlos Garcia instructed plaintiffs on which projects to work on. Id. at ¶15.

The plaintiffs were employees of Earthmovers. Employees would sometimes

meet at the office/yard and share rides to the construction site. See Affidavit of Ivan

---

[2] The facts of the case are set forth with a view toward the evidence and the
factual inferences therefrom in the light most favorable to the non-moving party. Key
West Harbour Dev. Corp. v. Key West, 987 F.2d 723, 726 (11th Cir.1993). This
standard is not changed by cross-motions for summary judgment, as the Court treats
each motion separately. See Adega v. State Farm Fire & Cas. Ins. Co., No. 07-20696,
2009 WL 3387689, at *3 (S.D. Fla. Oct.16, 2009), infra.

3

Garcia (DE# 53-9 at ¶4, 7/26/13).[3] Sometimes work would be cancelled for the day due to inclement weather or traffic regulations. Id. at ¶8. Ivan Garcia was the plaintiffs' supervisor on many construction projects. Id. at ¶3.

Earthmovers often contracts with the Florida Department of Transportation (hereinafter "FDOT") for certain construction projects. See Affidavit of Carlos Garcia (DE# 53-12 at ¶2, 7/26/13). The plaintiffs worked on construction projects contracted by FDOT. Id. at ¶4. Each FDOT construction site has an FDOT compliance officer who is required to monitor the hours worked by all employees on the project. Id. at ¶10. Any unpaid overtime hours must be reported and FDOT compliance officers interview all employees individually to ensure proper payment of overtime hours. Id. No violations of overtime pay were reported for either plaintiff by FDOT compliance officers. Id.

Earthmovers maintains the following records of employee hours: a notebook filled out by its president Carlos Garcia, records on the computer system, certified payroll records sent to FDOT, certified payroll records by a third party vendor, copies of paychecks and accountant records. See Affidavit of Carlos Garcia (DE# 53-12 at ¶2,

---

[3] Mr. Mejia testified that it was sometimes mandatory for employees to go from Earthmovers' office/yard to the job site and other times the employees would go directly to the job site depending on the project. See Deposition of Nestor Jose Mejia Obando (DE# 53-8 at 2, 7/26/13). Ivan Garcia attested that "[s]ometimes the workers would meet at the office/yard and share rides to the project site. Many workers chose this option to save on gas if the project was located far away. However, travel time to and from the job site was not included as work time." Affidavit of Ivan Garcia (DE# 53-9 at ¶6, 7/26/13). Similarly, Carlos Garcia attested that "[t]he location of the work was dependent upon the location of the specific construction project. All employees of I & C Earthmovers, including the Plaintiffs, were required to begin the work day at the job site." Affidavit of Carlos Garcia (DE# 53-12 at ¶5, 7/26/13). Because Mr. Mejia's deposition testimony conflicts with the affidavits of Messrs. Garcia, the Court finds that whether the plaintiffs were required to meet at Earthmovers' office/yard before traveling to the job site is an issue of fact that cannot be resolved on summary judgment.

7/26/13). Carlos Garcia visited construction sites to obtain reports on employee hours from the site supervisor. Id. at ¶9. Carlos Garcia logged hours for all employees in a notebook. Id. at ¶¶ 9, 11. The hours logged by Mr. Garcia are then reported to Lisette Garcia, the office administrator/business secretary who inputted those hours in the computer system. Id. at ¶11. There were no discrepancies between the hours logged by Earthmovers and the hours reported by FDOT compliance officers. Id. at ¶13.

Mr. Mejia took some days off of work, but he could not remember how many days. See Deposition of Nestor Jose Mejia Obando (DE# 53-8 at 3-4, 7/26/13). On at least one occasion before this lawsuit was filed Carlos Garcia admonished Mr. Mejia for failing to wear a hard hat. Id. at 7.

There were times when Omar Del Carmen Valle Centeno (hereinafter "Mr. Centeno") left the job site early. See Deposition of Omar Del Carmen Valle Centeno (DE# 53-7 at 1, 7/26/13). For example when he finished his work or because it was raining. Mr. Centeno did not keep track of the days he left early. Id. Mr. Centeno took sick days "a few times," but did not keep track of those days. Id. at 2.

On August 27, 2012, the plaintiffs filed their first amended complaint seeking overtime wages under the FLSA. See Amended Complaint Under 29 U.S.C. § 201-216 Overtime Violations (DE# 4, 8/27/12). The defendants were served with a copy of the amended complaint on August 30, 2012. See Return of Service (DE# 10, 9/7/12).

On September 7, 2012, Mr. Mejia signed a document stating that employees were required to wear certain safety equipment and that the "[f]ailure to meet these requirements during labor hours shall be deemed as a violation of company policy and will result in the employee being reprimanded and may also result in immediate

5

termination of employment." <u>See</u> Use of Mandatory Health and Safety Equipment (DE# 53-10, 7/26/13). On September 12, 2012, Mr. Mejia received a warning for failing to wear a hard hat. <u>See</u> Employee Warning Report (DE# 53-11, 7/26/13). On September 14, 2012, Mr. Mejia received a warning for breaking a concrete box. <u>See</u> Employee Warning Report (DE# 53-11, 7/26/13).

On or about September 20, 2012, plaintiff Nestor Mejia purportedly signed a document stating: "Employee Nestor Mejia acknowledges and confirms I & C Earthmovers have [sic] fully compensated his wages according to his work hours performed Thursday September 20, 2012." <u>See</u> September 20, 2012 Document (DE# 53-1, 7/26/13). Mr. Mejia denies that the signature on the document is his. <u>See</u> Plaintiff's' Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 61 at ¶2, 8/16/13). On the same day, Mr. Mejia was terminated from his employment.

Before Mr. Mejia was terminated, Ivan Garcia spoke with Carlos Garcia about terminating Mr. Mejia. <u>See</u> Affidavit of Carlos Garcia (DE# 53-12 at ¶21, 7/26/13). Carlos Garcia agreed with Ivan Garcia's decision to terminate Mr. Mejia. <u>Id.</u> Carlos Garcia was aware of Mr. Mejia's pending lawsuit against Earthmovers. <u>See</u> Return of Service (DE# 10, 9/7/12). Carlos Garcia told Lisette Garcia to prepare Mr. Mejia's termination letter. <u>See</u> Deposition of Lisette Garcia (DE# 55-4 at 9-10, 7/27/13). Carlos Garcia delivered the termination letter to Mr. Mejia. <u>See</u> Answers to ROGS (DE# 61-3 at 8, 8/16/13). Mr. Centeno continued to work for Earthmovers until sometime in 2013. <u>See</u> Affidavit of Carlos Garcia (DE# 53-12 at ¶23, 7/26/13).

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).

In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Cross-motions for summary judgment do not change this standard. "When evaluating cross-motions for summary judgment, the Court analyzes each individual motion on its own merits and thus views the facts on each motion in the light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins. Co., No. 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and

proceed to trial. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. <u>Celotex</u>, 477 U.S. at 322-23.  Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures.  <u>Id</u>. As the Supreme Court noted in <u>Celotex</u>:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

<u>Id</u>. at 322-23.  Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).

## ANALYSIS

**1.      Defendants' Motion for Summary Judgment (DE# 53, 7/26/13)**

**a.      Overtime**

The FLSA requires employers to pay overtime. <u>See</u> 29 U.S.C. § 207(a)(1). The defendants argue that they are entitled to summary judgment on the plaintiffs' claim of unpaid overtime because: (1) Mr. Mejia signed a document stating that no unpaid wages existed, (2) the defendants' records, as verified by multiple sources, are

accurate and reflect that the plaintiffs were properly compensated and (3) travel time is not compensable.

### i.     The Document Signed by Mr. Mejia

The defendants state:

> As part of its procedure to ensure that Earthmovers is not committing any wage violations, Earthmovers requests all employees to read and sign a company document confirming they have had the opportunity to report such claims, and confirm that no unpaid wages exist. On September 20, 2012, [Mr. Mejia] read and signed such document.

Defendants' Motion for Summary Judgment (DE# 53 at 1-2, 7/26/13). The document at issue states: "Employee Nestor Mejia acknowledges and confirms I & C Earthmovers have [sic] fully compensated his wages according to his work hours performed Thursday September 20, 2012." See September 20, 2012 Document (DE# 53-1, 7/26/13)

The defendants are not entitled to summary judgment with respect to the document allegedly signed by Mr. Mejia because: (1) Mr. Mejia denies that the signature on the document is his[4] and (2) the document does not state what the defendants want it to state. At best, the document states that Mr. Mejia was compensated for the work he performed on September 20, 2012, the day he was terminated, not that he was compensated for all hours during his term of employment with the defendant. The language of this document is not ambiguous, but even if it were, the Court is required to construe the facts in favor of the nonmovant on this issue, Mr. Mejia. Thus, the defendants are not entitled to summary judgment based on the

---

[4] See Plaintiff's' Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE# 61 at ¶2, 8/16/13).

document allegedly signed by Mr. Mejia.

## ii.    Accuracy of the Defendants' Time Records

The defendants argue that they kept accurate records, the plaintiffs do not have a clear recollection of the hours they worked and that therefore they are entitled to summary judgment on the plaintiffs' overtime claims.

"An employee claiming a violation of the FLSA overtime requirement bears the burden of proving by a preponderance of the evidence that there exists an employer-employee relationship; there was engagement in the activities within the coverage of the FLSA; the employee worked over 40 hours within a workweek without overtime compensation; and a definite amount of compensation is due." Solano v. A Navas Party Prod., Inc., No. 09-22847-CIV, 2011 WL 98819, at *7 (S.D. Fla. Jan. 12, 2011) (citations omitted). An employee "has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." Id. However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a relaxed burden-shifting scheme applies. Id. Under those circumstances:

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Id. at 687-88. "The employee's burden is not great and the Eleventh Circuit has found an employee can successfully shift the burden of proof by presenting his own testimony indicating the employer's time records cannot be trusted and that he worked the claimed overtime." Jones v. Carswell Prop. Maint., Inc., No. 09-22027-CIV, 2012 WL 163035, at *1 (S.D. Fla. Jan. 19, 2012) (on a renewed motion for judgment as a matter of law describing the burden-shifting scheme) (citing Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1316 (11th Cir. 2007)).

Here, the defendants argue that their records are accurate because they were verified by multiple parties including the FDOT. The time records attached to the defendants' summary judgment motion as exemplars are insufficient to conclude that the defendants kept proper records. Of note, the handwritten records (DE# 53-4) show the total weekly hours worked by the employees. The document entitled "Wage and Hour Record" (DE# 53-6) shows only the total daily hours worked by each employee. These time sheets do not show what time each employee arrived to work or left work and do not show if any breaks were taken. Additionally, the plaintiffs have presented evidence which calls into question the accuracy of the defendants' time records. The plaintiffs have submitted affidavits attesting that Carlos Garcia, the person who logged the plaintiffs' hours in a notebook, spent approximately 20 minutes at the job site once a week, if he visited the job site that week. See Affidavit of Mejia (DE# 61-1 at ¶7, 8/16/13); Affidavit of Centeno (DE# 61-2 at ¶7, 8/16/13). The plaintiffs also attest that the defendants "had instructed [them] to report a lesser schedule of 7 am to 3:30 pm and not the full schedule [they] actually worked." Id. at ¶8.

In Pascual v. Family Boarding Home, Inc., No. 11-21221-CIV, 2012 WL

2953768, at *1 (S.D. Fla. 2012) (M.J. Simonton), "the [p]laintiffs were required to sign a time sheet certifying that the time reflected on the sheet was accurate" at the end of each pay period. The defendants moved for summary judgment on the ground that their records were accurate and reflected that the plaintiffs were not owed any overtime. Id. at 2. The defendants in Pascual also cited to "statements made by the [p]laintiffs at their depositions which indicate[d] that the [p]laitniffs did not know how many days a week they worked, d[id] not have any records regarding their work, [we]re unable to testify whether the hours reflected on the [d]efendants' time sheets [we]re accurate or how much they [we]re owed." Id.

In denying summary judgment for the defendants, this Court in Pascual noted that:

> the "time sheets" that the [d]efendants have submitted are not hourly time sheets maintained on a daily basis but are documents entitled "Bi-Weekly Hourly Record" which state the total regular and overtime hours worked for a two-week period. The documents are signed by [the p]laintiffs . . . and state "I do hereby certify that the above time sheet is correct." Thus, the Defendants have not submitted any time sheets reflecting the number of hours worked daily by the [p]laintiffs."

Pascual, 2012 WL 2953768, at *5 (citation to the record and footnote omitted). The Court further stated that:

> [A]lthough [p]laintiffs . . . are unable to state with precision the number of uncompensated hours they worked and the days those hours were worked, pursuant to Allen, they are entitled to demonstrate at trial the amount and extent of the unpaid overtime as a "matter of just and reasonable inference." Thus, the [p]laintiffs have met their burden of estimating their FLSA damages for purposes of summary judgment. In addition, because the [d]efendants' "time sheets" are inconsistent with the number of hours that the [p]laintiffs contend that they worked, there are genuine issues of material facts that remain as to the number of overtime hours each [p]laintiff worked for which they were not compensated, and thus summary judgment on this issue is not appropriate.

Id. at 6.

In the instant case, the defendants' time sheets do not indicate what time the plaintiffs arrived at work each day, if they took any breaks during the work day or what time they left work. Moreover, the plaintiffs have presented sworn affidavits stating that Mr. Mejia regularly left work between 5 and 5:30 PM, took no breaks other than lunch and that his lunch break was limited to 30 minutes, not an hour. See Affidavit of Mejia (DE# 61-1 at ¶13, 8/16/13). Mr. Centeno states in his affidavit that he regularly left work between 5 and 5:30 PM, would regularly pick up the truck at 7:00 AM and regularly dropped it off at 6:00 PM and that his only break was a 30 minute lunch break. See Affidavit of Centeno (DE# 61-2 at ¶13, 8/16/13). Based on these facts, the Court finds that the "relaxed" standard in Anderson applies to the instant case and concludes that genuine issues of material fact preclude summary judgment in favor of the defendants on the plaintiffs' overtime claim. See Brown v. Gulf Coast Jewish Family Serv., Inc., No. 8:10-cv-1749-T-27AEP, 2011 WL 3957771, at *7 (M.D. Fla. Aug. 9, 2011) (report and recommendation) (noting that "much of the evidence concerning the amount and extent of uncompensated work comes from [the p]laintiff's own assertions . . . [a]lthough [the p]laintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that [the p]laintiff has produced a just and reasonable inference as to the amount of unpaid work, and that "any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider."), report and recommendation adopted in 2011 WL 4005928 (M.D. Fla. Sept. 8, 2011); Santelices v. Cable Wiring, 147 F.Supp.2d 1313, 1328 (S.D. Fla. 2001) (concluding that the plaintiff's failure to demonstrate the

exact number of overtime hours he worked did not defeat his claim on summary judgment).

The defendants have sought an extension of time or stay in order to obtain records from the FDOT. See Defendant's Motion for Extension of Time/Motion for Stay to File Supplementary Evidence in Support of Summary Judgment (DE# 68, 8/28/13). According to the defendants "upon review of FDOT records, it would be evident that no jury could reasonably find that the hourly records of the Plaintiffs [sic] were not true or accurate and that summary judgment is warranted." Id. at 2. Even assuming, arguendo, that the FDOT records[5] are consistent with the time records reported by Carlos Garcia, the plaintiffs have presented evidence that the defendants "had instructed [them] to report a lesser schedule of 7 am to 3:30 pm and not the full schedule [they] actually worked." See Affidavit of Mejia (DE# 61-1 at ¶8, 8/16/13); Affidavit of Centeno (DE# 61-2 at ¶8, 8/16/13). The plaintiffs have also presented evidence that they regularly left the job site between 5:00 and 5:30 PM, that their only break was a 30 minute lunch break and that Mr. Centeno regularly picked up the truck at 7:00 AM and regularly dropped it off at 6:00 PM. Thus, there still remains an issue of fact as to whether the plaintiffs worked overtime hours for which they were not compensated. See discussion supra. At trial, the jury will need to weigh the credibility of the plaintiffs against the competing evidence presented by the defendants to determine if any overtime hours are owed to the plaintiffs. Accordingly, the Court finds that the defendants are not entitled to summary judgment on this issue.

---

[5] If the defendants are able to obtain the FDOT records, the Court will determine at a later date whether those records will be admissible at trial.

### iii.    Compensable Travel Time

The defendants also argue that the plaintiffs are not entitled to recover for travel time as a matter of law. Under the Portal-to-Portal Act, 29 U.S.C. §§ 251-262, an employer is not subject to liability under the FLSA:

> on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of  . . .:
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are **preliminary to or postliminary** to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a) (emphasis added). "Preliminary and postliminary activities . . . are compensable if they are an integral and indispensable part of the [employee's] principal activities." Burton v. Hillsborough Cnty, Fla, 181 F. App'x 829, 833 (11th Cir. 2006) (per curiam) (alteration in original; internal quotation marks omitted). Moreover, "an employer is not required to pay employees for otherwise compensable activities if the

time spent performing those activities is <u>de minimis</u>." <u>Id.</u> (citations omitted).[6]

Travel time expended for the employee's convenience is not compensable under the FLSA.

> [T]he excepting language of [§ 254] **was intended to exclude from FLSA coverage only those activities predominantly spent in the employees' own interests.** In other words, where the activities at issue are undertaken for the employees' own convenience, not being required by the employer, and not being necessary for the performance of the [employees'] duties to the employer, they are fairly construed as noncompensable. However, when an employer derives significant benefit from the activity at issue, that activity is principal to the performance of the work for which the plaintiffs are employed, and is therefore compensable. Put simply, where the activity is  an integral and indispensable part of the principal activities for which [the employees] are employed, the Portal-to-Portal exemption does not apply.

<u>Burton</u>, 181 F. App'x at 837 (citing <u>Dunlop v. City Electric, Inc.</u>, 527 F.2d 394 (5th Cir. 1976) (some alterations in original; internal citations to <u>Dunlop</u> and internal quotation marks omitted)).

The defendants rely on <u>Knight v. Allstar Building Materials, Inc.</u>, No. 6:08-cv-457-Orl-22DAB, 2009 WL 3837870 (M.D. Fla. Nov. 17, 2009) in support of their argument that the plaintiffs cannot recover for travel time. In <u>Knight</u>, "[the plaintiff did not] show[ ] that the activities he performed were integral and indispensable to his primary job duties and not simply incidental to the use of the vehicles; nor [did he] show[ ] that he was required to ride in company vehicles or outside of the normal commuting area." <u>Id.</u> at *5.

<u>Knight</u> is factually distinguishable from the instant case. Here, Mr. Mejia testified

---

[6] It does not appear that the defendants in their summary judgment motion and in their reply are arguing that the plaintiffs' travel time was <u>de minimis</u>.

during his deposition that it was sometimes mandatory for employees to go from

Earthmovers' office/yard to the job site and other times the employees would go directly

to the job site depending on the project. See Deposition of Nestor Jose Mejia Obando

(DE# 61-4 at 8, 8/16/13). He also testified that he and other employees "had to pick up

many things, materials that were not located in the job sites" at Earthmover's

office/yard. Id. at 9. On the other hand, Ivan Garcia attested that "[s]ometimes the

workers would meet at the office/yard and share rides to the project site. Many workers

chose this option to save on gas if the project was located far away. However, travel

time to and from the job site was not included as work time." Affidavit of Ivan Garcia

(DE# 53-9 at ¶6, 7/26/13). Similarly, Carlos Garcia attested that "[t]he location of the

work was dependent upon the location of the specific construction project. All

employees of . . . Earthmovers, including the [p]laintiffs, were required to begin the work

day at the job site." Affidavit of Carlos Garcia (DE# 53-12 at ¶5, 7/26/13). Because Mr.

Mejia's deposition testimony conflicts with the affidavits of Messrs. Garcia, whether the

plaintiff's travel time was compensable under the FLSA is an issue of fact for the jury to

decide.

### b.    Retaliation

With respect to Mr. Mejia's retaliation claim, the defendants argue that they did

not retaliate against Mr. Mejia because Mr. Mejia was terminated for failing to wear a

safety hat, damaging a structure, failing to show up to work on several occasions and

failing to answer his company issued telephone. See Defendants' Motion for Summary

Judgment (DE# 53 at 4, 7/26/13). The defendants further state that Ivan Garcia, the

person who decided to terminate Mr. Mejia, was unaware of the instant action at the

time he made that decision. Id.

> Section 215(a)(3) of the FLSA prohibits employers from
> discharg[ing] or in any other manner discriminat[ing] against any
> employee because such employee has filed any complaint or instituted or
> caused to be instituted any proceeding under or related to this chapter, or
> has testified or is about to testify in any such proceeding, or has served or
> is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). Where the plaintiff does not present any direct evidence of

retaliatory discharge, circumstantial evidence may be evaluated under the burden

shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

(1973). See Raspanti v. Four Amigos Travel, Inc., 266 F. App'x 820, 822 (11th Cir.

2008).

Under the McDonnell Douglas framework, the plaintiff must first establish a prima

facie case of retaliation. Id. "A prima facie case of FLSA retaliation requires a

demonstration by the plaintiff of the following: '(1) she engaged in activity protected

under [the] act; (2) she subsequently suffered adverse action by the employer; and (3)

a causal connection existed between the employee's activity and the adverse action.'"

Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000) (citing Richmond v.

ONEOK, Inc., 120 F.3d 205, 208-09 (10th Cir.1997)). The employer must then

articulate a legitimate nonretaliatory reason for the adverse employment action.

Raspanti, 266 F. App'x at 822. "If the employer asserts a legitimate reason for the

adverse action, the plaintiff may attempt to show pretext." Id. at 1343.

In his retaliation claim, Mr. Mejia alleges that on August 27, 2012, the plaintiffs

filed their first amended complaint seeking overtime wages under the FLSA. See

Second Amended Complaint Under 29 U.S.C. § 201-216 Overtime Violations (DE# 14

at ¶23, 9/25/13). The defendants were served with a copy of the complaint on August 30, 2012. Id. at ¶24. On September 20, 2012, Mr. Mejia was terminated from his employment. Id. at ¶25. The defendants terminated Mr. Mejia because he asserted his claim for unpaid overtime. Id. at ¶26.[7]

The defendants do not dispute the first two elements of a prima facie case of retaliation – that Mr. Mejia engaged in a protected activity and that he subsequently suffered an adverse action by his employer. Rather, the defendants argue that "there is no causal connection between the filing of this lawsuit by [Mr. Mejia] and his subsequent termination." Defendants' Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment (DE# 64 at 1, 8/23/13). Specifically, the defendants argue that Ivan Garcia, the person who terminated Mr. Mejia, did not know about Mr. Mejia's FLSA claims on the date of Mr. Mejia's termination. See Defendants' Motion for Summary Judgment (DE# 53 at 8, 7/26/13).

It is not entirely clear from the record whether Ivan Garcia was the person who terminated Mr. Mejia. Carlos Garcia's affidavit states that before Mr. Mejia was terminated, Ivan Garcia spoke with Carlos Garcia about terminating Mr. Mejia. See Affidavit of Carlos Garcia (DE# 53-12 at ¶21, 7/26/13). Carlos Garcia agreed with Ivan Garcia's decision to terminate Mr. Mejia. Id.[8] Mr. Mejia stated that Carlos Garcia delivered the termination letter to him in his response to Interrogatory 20: "State the

---

[7] At his deposition, Mr. Mejia testified that he was terminated because he would not sign a piece of paper presented to him by Leonel Garcia stating that he was paid overtime. See Deposition of Mejia (DE# 61-4 at 38-39, 8/16/13).

[8] Carlos Garcia was aware of Mr. Mejia's pending lawsuit against Earthmovers. See Return of Service (DE# 10, 9/7/12).

name of the individual or individuals who advised you that your employment was terminate[d]." <u>See</u> Answers to ROGS (DE# 61-3 at 8, 8/16/13). Moreover, Lisette Garcia testified at her deposition that the person who notified Mr. Mejia of his termination was Carlos Garcia and that Carlos Garcia was the one who told her to prepare Mr. Mejia's termination letter. <u>See</u> Deposition of Lisette Garcia (DE# 55-4 at 9-10, 7/27/13). It is undisputed that Carlos Garcia knew about Mr. Mejia's overtime claim on the day Mr. Mejia was terminated. <u>See</u> Return of Service (DE# 10, 9/7/12).

The plaintiffs argue that Ivan Garcia knew or should have known of Mr. Mejia's claims because he knew of the co-plaintiff Mr. Centeno's overtime claim within a week of the lawsuit being filed. Mr. Centeno's affidavit states that "Ivan was telling my coworkers about my lawsuit a week after the complaint was served." <u>See</u> Affidavit of Omar del Carmen Valle Centeno (DE# 61-2 at ¶16, 8/16/13). Mr. Centeno filed his lawsuit on August 24, 2012. Three days later, on August 27, 2012, the complaint was amended and Mr. Mejia was added as a plaintiff. The only return of service that appears on the docket is for the amended complaint containing Mr. Mejia's claims.

Under Eleventh Circuit precedent, a plaintiff satisfies the causation element by providing sufficient evidence that the decision-maker had knowledge of the protected activity and that there was a close temporal proximity between this awareness and the adverse action. <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004); <u>see also</u> <u>Brungart v. BellSouth Telecommunications, Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000) (stating that "the general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."). On the

20

other hand, "[i]f there is a substantial delay between the protected expression and the adverse action[,] in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Id. at 1220-21.

Here, Mr. Mejia was terminated 21 days after the defendants were served with this lawsuit and after he refused to sign a document from Leonel Garcia stating that he had been compensated for overtime. The Eleventh Circuit has found that the causation element was satisfied in a case where the period between the protected activity and the adverse action was one month. See Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) (stating that "[t]he short period of time [one month] . . . between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation."). Here, at most, the period of time between the protected activity and the adverse action was 21 days, and may have been less time depending on when Mr. Mejia refused to sign the document presented to him by Leonel Garcia.

However, "temporal proximity alone is insufficient to create a genuine issue of fact as to the causal connection where there is unrebutted evidence that the decision-maker did not have knowledge that the employee engaged in protected conduct." Brungart, 231 F.3d at 799. The defendants have asserted that Ivan Garcia had no knowledge of Mr. Mejia's claims against the defendants at the time he made the decision to terminate Mr. Mejia. See Affidavit of Ivan Garcia (DE# 53-9 at ¶17, 7/26/13). The Eleventh Circuit has stated that "[n]either a court nor a jury may impute knowledge to a decision-maker who has sworn he had no actual knowledge." Brochu v. City of Riviera Beach, 304 F.3d 1144, 1156 (11th Cir. 2002).

21

Assuming Ivan Garcia was the person who terminated Mr. Mejia, there is an issue of fact as to whether Ivan Garcia knew of Mr. Mejia's claims in the instant case. Although, Ivan Garcia denies any knowledge of the lawsuit at the time he terminated Mr. Mejia, he consulted with Carlos Garcia (who knew of the lawsuit) before firing Mr. Mejia and the plaintiffs have presented evidence, through the affidavit of Mr. Centeno, that Ivan Garcia knew about Mr. Centeno's claims against the defendants a week after the defendants were served with the amended complaint. Of importance, Mr. Centeno's overtime claim was asserted in the same document and in the same count as Mr. Mejia's overtime claim.[9] Thus, construing the facts in the light most favorable to the nonmovants, there is at least an issue of fact as to whether Ivan Garcia knew of Mr. Mejia's claims at the time he decided to terminate him.

Having determined that Mr. Mejia has established a prima facie case for retaliation, the burden shifts to the defendants to articulate a legitimate nonretaliatory reason for Mr. Mejia's termination. Raspanti, 266 F. App'x at 822. The defendants point to record evidence that Mr. Mejia was terminated because he failed to wear a safety hat, damaged a structure, failed to show up to work on several occasions and failed to answer his company issued telephone. See Defendants' Motion for Summary Judgment (DE# 53 at 4, 7/26/13).

---

[9] The defendants argue that Mr. Centeno was the only plaintiff in the original complaint and that "[Mr. Mejia] was only joined as a party later. See Defendants' Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment (DE# 64 at 4, 8/23/13). While this is technically true, Mr. Mejia was joined as a plaintiff a mere three days after the original complaint was filed, the return of service was for the amended complaint and there is no evidence on the docket that the defendants were served with the original complaint that contained Mr. Centeno's claims only.

Since the defendants have asserted a legitimate reason for terminating Mr. Mejia, the burden falls back on Mr. Mejia to show that the defendants' reasons for the termination were pretextual. Wolf, 200 F.3d at 1343 ("If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext."). To show pretext, Mr. Mejia must reveal "'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quoting Sheridan v. E.I. DuPont de Nemours and Co., 106 F.3d 1061, 1072 (3d Cir. 1996) (other citations omitted)). "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." Damon v. Fleming Supermarkets of Fla, Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). Moreover, in order to demonstrate pretext, a plaintiff must "produce sufficient evidence for a reasonable fact-finder to conclude that **each** of the employer's proffered . . . reasons is pretextual." Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir.2000) (en banc) (emphasis added).

Here, the evidence shows that Mr. Mejia was warned/ received violations only after he had filed the instant action against the defendants. On September 7, 2012, after the defendants were served with the amended complaint, Mr. Mejia signed a document stating that employees were required to wear certain safety equipment and that the "[f]ailure to meet these requirements during labor hours shall be deemed as a violation of company policy and will result in the employee being reprimanded and may also result in immediate termination of employment." See Use of Mandatory Health and

Safety Equipment (DE# 53-10, 7/26/13). On September 12, 2012, Mr. Mejia received a warning for failing to wear a hard hat. See Employee Warning Report (DE# 53-11, 7/26/13). On September 14, 2012, Mr. Mejia received a warning for breaking a concrete box. See Employee Warning Report (DE# 53-11, 7/26/13). Mr. Mejia filed an affidavit denying that he refused to wear a safety helmet and that he always wore a helmet when required. See Affidavit of Mejia (DE# 61-1 at ¶15, 8/16/13).[10] With respect to the structure that Mr. Mejia allegedly damaged, he testified at deposition as follows:

> Q.    What did the warning say?
>
> A.    It's about the structure and I did advise Leonel that that was not my fault. That was because of the construction of the structure. When I lowered it the structure broke. But if that structure would have been completely destroyed they would not installed it and at the moment that structure is there; it was placed there.
>
> Q.    How did the structure break?
>
> A.    It's while I was unloading and that structure is squared, and in the corners when you lower it the corners break and you have to repair it, and I told Leonel that.

See Deposition of Mejia (DE# 61-4, 8/16/13). With respect to the allegation that Mr. Mejia stopped showing up to work, Mr. Mejia testified that the "[t]he foreman added a law saying that if he did not call [Mr. Mejia] in the morning then [Mr. Mejia] would not go to work. So if he didn't call [Mr. Mejia], [Mr. Mejia] did not show up to work." See Deposition of Mejia (DE# 61-4 at 41, 8/16/13).

Through his deposition and affidavit, Mr. Mejia challenges the facts underlying

---

[10] Notwithstanding his affidavit, Mr. Mejia did testify that Carlos Garcia had "called [to Mr. Mejia's] attention" the failure to wear a hard hat, but that that was "years ago" and before the lawsuit was filed. See Deposition of Mejia (DE# 61-4 at 36, 8/16/13).

each of the reasons the defendants have proffered for terminating Mr. Mejia's employment. Thus, Mr. Mejia has shown that there are issues of fact as to whether the defendants' reasons for terminating him were pretextual. See Gutescu v. Carey In'l, Inc., No. 01-4026-CIV, 2004 WL 5333762, at *6 (S.D. Fla. Feb. 19, 2004) (stating that "although [the d]efendants' argue that they had a legitimate, non-discriminatory reason for terminating [the p]laintiff, she has offered evidence to rebut this claim and, thus, summary judgment is precluded."). For this reason, the defendants are not entitled to summary judgment on Mr. Mejia's retaliation claim.

**2.      Plaintiffs' Motion for Summary Judgment (DE# 54, 7/27/13)**

The plaintiffs seek summary judgment on two issues: (1) that Earthmovers is a covered enterprise under the FLSA and (2) that the individual defendants, Leonel Garcia and Carlos Garcia, were the plaintiffs' employers under the FLSA. See Plaintiffs' Motion for Summary Judgment (DE# 54 at 1, 7/27/13).

**a.      Enterprise Coverage**

Under the FLSA, "[a]n employer falls under the enterprise coverage section of the FLSA if it 1) 'has employees engaged in commerce or the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and 2) has at least $500,000 of 'annual gross volume of sales made or business done.'" See Polycarpe v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010) (quoting 29 U.S.C. §203(s)(1)(A)).

The plaintiffs argue that they are entitled to a finding of enterprise coverage as a

matter of law because: (1) defendants and their employees used machinery that is manufactured outside of the state of Florida, (2) defendants have at least two or more employees on a regular basis who handle this machinery, (3) the invoices for the machinery are paid to sources outside of Florida and (4) the parties stipulate that the defendants grossed over $500,000 annually[11] during the relevant time period. See Plaintiffs' Motion for Summary Judgment (DE# 54 at 5, 7/27/13).

The defendants respond that the plaintiffs' summary judgment motion should be denied because the plaintiffs failed to submit a statement of undisputed material facts. See Defendants' Response to Plaintiff's Motion for Summary Judgment (DE# 59 at 1-2, 8/14/13). The defendants are mistaken. The plaintiffs' statement of material facts was filed on the same day as their summary judgment motion. See Plaintiffs' Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment (DE# 55, 7/27/13). The defendants further argue that "the Polycarpe [v. E&S Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010)] Court set out an important analysis for the definition of 'goods' and 'materials, which [the p]laintiffs have failed to establish here." See Defendants' Response to Plaintiff's Motion for Summary Judgment (DE# 59 at 2-3, 8/14/13). The defendants do not provide any legal analysis for their position that the plaintiffs are not entitled to summary judgment on the issue of enterprise coverage.

The Court finds that enterprise coverage applies in the instant case as a matter of law. In Polycarpe v. E&S Landscaping Service, Inc., 821 F.Supp.2d 1302 (S.D. Fla. 2011), after the Eleventh Circuit remanded the case following the Polycarpe v. E&S

---

[11]   See Plaintiffs' Statement of Undisputed Fact (DE# 55 at ¶18, 7/27/13).

Landscaping Serv., Inc., 616 F.3d 1217, 1220 (11th Cir. 2010) decision, the district court entered summary judgment in favor of the plaintiffs on the issue of enterprise coverage. The defendant in Polycarpe was a landscaping business. The Court found as a matter of law that "the trucks driven by [the p]laintiffs and other employees of the [d]efendant to transport themselves and the lawn equipment from client to client qualif[ied] as 'materials' that have traveled in commerce to trigger enterprise coverage under the FLSA." Id. at 1307. The district court stated that "under the facts specific to the instant case the trucks come within the definition of 'materials' because their use is necessary to do something - i.e., it is necessary for the [d]efendants' employees to use the trucks to transport themselves and the landscaping equipment to each work site." Id.

Here, "Earthmovers provides general contractor services for construction projects, specifically for the building of roadways and highways." Defendants' Motion for Summary Judgment (DE# 53 at 1, 7/26/13). In order to perform this work, Earthmovers' employees use excavators, loaders and bulldozers which are manufactured outside the state of Florida. See Plaintiffs' Statement of Undisputed Fact (DE# 55 at ¶19, 7/27/13). At least two or more employees on a regular basis handle this machinery. Id. at ¶22. Like, Polycarpe, the Court finds that the machinery used in the instant case qualifies as "materials" that traveled in interstate commerce triggering enterprise coverage under the FLSA.

### b.    Individual Employers

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). In Patel v.

Wargo, 803 F.2d 632 (11th Cir.1986), the Eleventh Circuit acknowledged that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Id. at 637-38 (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983)) (citations omitted).

The plaintiffs argue that the individual defendants, Leonel and Carlos Garcia, are the plaintiffs' employers under the FLSA because "each maintain a thirty percent (30%) ownership interest in [Earthmovers], are corporate officers of [Earthmovers] who ran the day to day operations of [Earthmovers], and are the ones that had the day to day operational control over [Earthmovers]." Plaintiffs' Motion for Summary Judgment (DE# 54 at 9, 7/27/13).

The Court finds that Carlos Garcia and Leonel Garcia were the plaintiffs' employers under the FLSA. Here, Carlos Garcia is the president of Earthmovers. Leonel Garcia is the vice president of Earthmovers. Both individuals exercised significant control over the day-to-day operations of Earthmovers. For example, Messrs. Garcia signed checks on behalf of Earthmovers, including payroll, the plaintiffs reported their hours to either Leonel Garcia or Carlos Garcia on a daily basis, Leonel Garcia issued warnings to Mr. Mejia and Carlos Garcia instructed plaintiffs on which projects to work on.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment (DE# 53, 7/26/13) is **DENIED** and the Plaintiffs' Motion for Summary

28

Judgment (DE# 54, 7/27/13) **GRANTED**.

DONE AND ORDERED in Chambers at Miami, Florida this **6th** day of
September, 2013.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record